**FLORIDA REALTY TRUST,
et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of New Heritage Bank, Defendant.**

**Civ. A. No. 92–40070–NMG.**

United States District Court,
D. Massachusetts.

Dec. 16, 1994.

---

Stephen J. Gordon, Worcester, MA, Robert V. Eberle, Saugus, MA, for plaintiffs.

David A. Talman, Talamo, Phillips, Silver & Talman, Worcester, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiffs, Michael and Sheila Miller, and Florida Realty Trust (of which Michael Miller is trustee), brought this action against the New Heritage Bank ("the Bank"). They allege that the Bank is liable for conversion of property, breach of contract, interference with contractual relations, and unfair and deceptive business practices.

When the Bank was declared insolvent in 1992, the Federal Deposit Insurance Corporation ("the FDIC") was appointed receiver and was substituted for the Bank as the real party in interest in this case. The FDIC has denied the plaintiffs' allegations and has filed a counterclaim against the Millers, individually, for the alleged deficiency remaining after the FDIC foreclosed on a mortgage previously executed by the Millers in favor of the Bank.

Pending before this Court are the following motions:

1) the FDIC's motion to reconsider the Court's Order of September 15, 1994, denying the FDIC's motion to amend its counterclaim, and

2) the FDIC's motion for summary judgment on the plaintiffs' claims and on its counterclaim.

## I. BACKGROUND

For the purpose of the summary judgment motion, the relevant facts are recited in the light most favorable to the plaintiffs, the non-moving party. *O'Conner v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

Michael and Sheila Miller and Florida Realty Trust ("the plaintiffs") borrowed money from the Bank and executed four promissory notes in 1988 in the amounts of $221,000, $2,000, $22,000 and $2,170,000. They borrowed additional money and executed a fifth note in 1990 for $15,000. The note for $2,170,000 was secured by a mortgage on three parcels of land in Fitchburg, Massachusetts and six parcels of land in Worcester, Massachusetts.

The plaintiffs fell in arrears on all five notes by failing to make payments due in October, 1990. Although they were in arrears, the plaintiffs brought this action against the Bank basing their claims on the Bank's breach of an alleged novation of the notes.

In essence, the plaintiffs assert that, in January, 1991, Michael Miller met with the Bank's vice-president, Edward McCormick, and effected a novation of the notes. Under the novation, the parties supposedly restructured the payment schedule of the outstanding notes and agreed that the Bank would not foreclose on the mortgage or seize the plaintiffs' property. The plaintiffs claim in this case that, by not honoring the novation, the Bank breached its contract, converted the plaintiffs' property, interfered with plaintiffs' business relations and committed unfair and deceptive trade practices.

The FDIC denies that the parties ever effected a novation of the loan agreements and has moved for summary judgment on the plaintiffs' claims. In addition, the FDIC has moved for summary judgment on its counterclaim which seeks damages in the amount of $262,940.06 for the deficiency remaining after the FDIC foreclosed on the plaintiffs' mortgage.

## II. FDIC'S MOTION TO RECONSIDER

On September 15, 1994, the FDIC moved to amend its counterclaim for a second time in order to increase its claim for damages from $262,940 to more than $1,000,-000. This motion to amend the FDIC's claim for damages was filed seventeen months after the Court's deadline for dispositive motions.[1] Because the motion was filed untime-

---

1. That deadline, April 16, 1993, was the date on

which the FDIC filed the summary judgment·

ly, and because the Court believes that the FDIC inappropriately attempted to add a claim for an additional $750,000 into its motion for summary judgment, the Court denied the FDIC's motion to amend its claim.

At a hearing held on November 7, 1994, the FDIC orally moved the Court to reconsider its Order denying the FDIC's motion to amend the claim for damages, but has offered no persuasive argument justifying such reconsideration. Consequently, the Court will deny the FDIC's motion to reconsider.

## III. FDIC'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

■ Summary Judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs, the nonmoving party, and indulge all reasonable inferences in their favor. *O'Conner,* 994 F.2d at 907.

■ With respect to a motion for summary judgment, the burden is on the moving party to show that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990), *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the movant satisfies that burden, it shifts to the non-moving party to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir.1992) *(citing Andersen ).*

The nonmovant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56.

### B. The Validity of the Alleged Novation Under FIRREA

All of the plaintiffs' claims in this case rest on the Bank's alleged breach of the novated loan agreements.[2] It follows, therefore, that if the alleged novation was, itself, invalid under controlling law, the plaintiffs' claims must fail.

Under the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1823(e), ("FIRREA"), an agreement against the interest of the FDIC, such as the alleged novation in this case, is valid only if that agreement:

1) is in writing,

2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). *See also D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). FIRREA presents a formidable burden for borrowers, but Congress intended to favor "the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Timberland Design, Inc. v. First Service Bank for Savings,* 932 F.2d 46, 48 (1st Cir.1991) *(quoting Bell & Murphy &*

---

motion addressed in this Memorandum and Order.

**2.** At a hearing on September 15, 1994, the plaintiffs argued that they had a claim under M.G.L.c. 93A against the FDIC for its alleged mismanage-

ment of the mortgaged properties which does not rely on the "novation" claim. The Court rejects that argument, however, because the plaintiffs alleged no claim for "mismanagement" in its complaint.

*Assoc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.1990)).

 There is a conspicuous absence of evidence that the alleged novation in this case meets any of the requirements under § 1823(e). Aside from the plaintiffs' mere allegations, there is no evidence that the novation even existed. Indeed, FIRREA was designed to render secret side agreements such as the plaintiffs' alleged novation in this case unenforceable. Thus, because the alleged novation does not satisfy any of the requirements under § 1823(e), it is invalid and the plaintiffs cannot rely on it to pursue their claims. *See Timberland Design, Inc.*, 932 F.2d at 48–50. This Court finds, therefore, that there is no genuine issue of material fact in dispute and that, as a matter of law, the FDIC is entitled to judgment on the plaintiffs' claims. *See* Fed. R.Civ.P. 56.

Finally, the Court finds that, based on evidence submitted by the FDIC, there was a deficiency of $262,940.06 after the FDIC foreclosed on the property secured by plaintiffs' mortgage. The plaintiffs' only defense to the FDIC's counterclaim for the deficiency is also based on the alleged novation. For the reasons outlined above, however, the alleged novation is invalid under FIRREA, and the plaintiffs are foreclosed from relying on it as a defense to the FDIC's counterclaim. *See Timberland Design, Inc.*, 932 F.2d at 48–50. Consequently, the Court finds that, as a matter of law, the FDIC is entitled to judgment on its counterclaim in the amount of $262,940.06.[3]

## ORDER

For the foregoing reasons, the FDIC's motion to amend its damages is DENIED, and the motion of the FDIC for summary judgment is ALLOWED.

So Ordered.

---

3. On November 21, 1994, nineteen months after the motion for summary judgment was filed, after the Court had held two hearings on that motion and without leave of the Court, the plaintiff, Michael Miller, submitted a second memorandum in opposition to the motion for summary judgment. That memorandum asserts a legal theory never before presented to the Court, namely that the FDIC did not succeed to the rights of the Bank and, therefore, cannot defend the Bank's interests in this case. This latest argument is rejected as untimely. The deadline for plaintiffs to submit a memorandum in opposition to the motion for summary judgment has long since passed. *See* L.R. 7.1 (requiring opposing party to submit its memorandum and affidavits within fourteen days after service of the motion). Moreover, if Miller seriously opposes the FDIC's substitution as the real party in interest in this case, he should have opposed the FDIC's original motion for substitution in May, 1992.