Nieve ANJOMI, Plaintiff,

v.

David KALAI, Nava Kalai, Nadav Kalai, Erlinda Farkas, Eran Vardi, URS Tax, Inc., URS Staffing, United Revenue Service, Inc., and Office Furnishing Inc., Defendants.

Civil Action No. 11–10521–WGY.

United States District Court, D. Massachusetts.

Dec. 12, 2011.

Thomas R. Donohue, Leonard H. Kesten, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Plaintiff.

Evan M. Fray–Witzer, Ciampa Fray–Witzer, LLP, Boston, MA, for Defendant.

## ORDER

YOUNG, District Judge.

After considering Nadav Kalai's Motion to Dismiss ("Motion to Dismiss") and supporting memorandum, ECF Nos. 25, 26, Nieve Anjomi's ("Anjomi") Opposition to Defendant Nadav Kalai's Motion to Dismiss ("Anjomi's Opposition"), ECF No. 29, Anjomi's Complaint, ECF No. 1, and Anjomi's First Amended Complaint ("Amended Complaint"), ECF No. 30–1,[1] the Court GRANTS Nadav Kalai's Motion to Dismiss.

## I. Personal Jurisdiction

The Court asserts personal jurisdiction over Kalai consistent with both the Massachusetts long-arm statute and the United States Constitution's Due Process clause due to his role as President of URS Tax, Inc. ("URS Tax").[2] Compl. ¶ 23; Anjomi's Opposition 13 ("URS Tax ... is located at 180 Wells Avenue, Suite 101B, Newton, MA 02459"); *see* Mass. Gen. Laws ch. 223A § 3 ("[A] court may exercise personal jurisdiction over a person ... as to a cause of action ... arising from the person's ... (a) transacting any business in this commonwealth [or] (e) having an interest in, using or possessing real property in this commonwealth...."); *Brookfield Machine, Inc. v. Calbrit Design*, 929 F.Supp. 491, 498, 500 (D.Mass.1996) (Gorton, J.) (describing the three-part Due Process test "to determine if sufficient contacts exist to exercise specific personal jurisdiction"); *Schaefer v. Cybergraphic Systems, Inc.*, 886 F.Supp. 921, 924 (D.Mass.1994) (citing *Marino v. Hyatt Corp.*, 793 F.2d 427, 428–30 (1st Cir.1986) (requiring a "substantial nexus between the cause of action and the defendant's instate activity")).

## II. Retaliation

To bring a retaliation claim, the plaintiff "must show that a reasonable person could

---

1. Although the Court has denied Anjomi's Motion for Leave to File the First Amended Complaint, ECF No. 38, the Court reviewed the proposed Amended Complaint. The additional facts presented in the proposed Amended Complaint do not ultimately change the analysis presented herein.

2. It is helpful, but not necessary, to note that the Amended Complaint additionally asserts that Kalai was responsible for investigating harassment-related complaints at URS Tax. Amended Compl. ¶ 26.

find the alleged retaliatory conduct materially adverse," and must establish that the plaintiff "engaged in a protected activity," was discharged, and that "there was a causal relationship between the discharge and the protected activity." *Allard v. Citizens Bank*, 608 F.Supp.2d 160, 169–70 (D.Mass.2009) (Tauro, J.). "[C]lose temporal proximity between a protected activity and a subsequent discharge may give rise to an inference of causation." *Id.* at 170 ("An inference of causation is only appropriate … when Plaintiff has presented evidence that the decisionmaker was aware of Plaintiff's protected activity.").

Anjomi satisfies the first two elements since he filed a complaint with the Massachusetts Commission Against Discrimination (the "Commission") and was subsequently discharged. This Court, however, cannot infer causation in order to satisfy the third element. Even though the proposed Amended Complaint states that Nadav Kalai knew of the complaint to the Commission, Amended Compl. ¶ 56, Anjomi fails to establish that Nadav Kalai was the decision-maker in Anjomi's subsequent termination. Compl. ¶ 23 ("Defendant David Kalai is the de-facto boss of all the Kalais' companies."); Amended Compl. ¶ 30 (same).

Therefore, the Court dismisses this claim as to Nadav Kalai.

## III. Discrimination

To bring a discrimination claim, plaintiffs must establish four elements: "membership in a protected class, harm, discriminatory animus, and causation."[3] *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 83 (1st Cir.2004) (quoting *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 502, 751 N.E.2d 360 (2001)).

Even if this Court accepts that Anjomi's perceived homosexuality and Iranian background establish his membership in a protected class and accepts that Anjomi experienced harm due to termination and lesser benefits and compensation, Anjomi fails to assert any facts to support the assertion that Nadav Kalai held any such discriminatory animus.[4]

Furthermore, to bring a discrimination claim under chapter 151B, Anjomi must establish "that the defendant's discriminatory animus contributed significantly to [the discriminatory] action, [and] that it was a material and important ingredient in causing it to happen." *Lipchitz*, 434 Mass. at 506 n. 19, 751 N.E.2d 360 (stating that intent need not be the sole cause of the discriminatory action). While it may be true that Anjomi's complaint "need only include a short and plain statement" in order to survive this Motion to Dismiss, his complaints must still provide sufficient facts to establish that he was terminated due to discriminatory animus. *See O'Connor v. Northshore Int'l Ins. Servs.*, 61 Fed. Appx. 722 (1st Cir.2003). Anjomi fails to state any facts that he was subject to any alleged discrimination due to Nadav Kalai's alleged discriminatory animus.

Even in his Opposition memorandum, Anjomi fails to provide any clarification on whether Nadav Kalai held any discriminatory animus and whether that animus caused any harm. *See generally* Anjomi's Opposition 7. Any discriminatory animus allegedly expressed apparently came from

---

3. This analytical framework applies to both Title VII and chapter 151B claims.

4. For example, in the Amended Complaint, he broadly claims that Israeli/Jewish employees were allowed to participate in the retirement program, received tokens of appreciation, received higher compensation, and received bonuses not given to Anjomi, *e.g.*, Amended Compl. ¶ 124, but provides no facts to support these claims.

Anjomi's co-workers.[5] *See* Compl. ¶¶ 15–19, 27. Indeed, it appears that Kalai actually investigated the claims and did not find any harassment.[6] *Id.* ¶ 33.

Therefore, the Court dismisses this claim as to Nadav Kalai.

## IV. Massachusetts General Laws chapter 12 section 11I

■ "To establish a claim under the Act, a plaintiff must prove that (1) his exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference ... was by threats, intimidation or coercion." *Columbus v. Biggio,* 76 F.Supp.2d 43, 54 (D.Mass.1999) (Tauro, D.J.) (quoting *Freeman v. Planning Bd. of West Boylston,* 419 Mass. 548, 564, 646 N.E.2d 139 (1995)). It's unclear how Nadav Kalai interfered, threatened, intimidated, or coerced Anjomi. Anjomi fails to provide any basis for such claims.

Therefore, the Court dismisses this claim as to Nadav Kalai.

## V. Violation of 42 U.S.C. § 1985(3)

■ In a section 1985(3) claim, plaintiffs must allege: "(1) a conspiracy; (2) a conspiratorial purpose to deprive a person ... of equal protection or of equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) either injury to person or property or deprivation of a constitutionally protected right or privilege." *Id.* at 49. While plaintiffs need not satisfy any heightened pleading requirement, courts must continue to "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Educadores Puertorriqueños en Acción v. Hernandez,* 367 F.3d 61, 68 (1st Cir.2004) (citing *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987)).

Here, Anjomi appears to assert that Nadav Kalai conspired with the other defendants to ruin his career. Compl. ¶ 74. Anjomi, however, provides no facts to support this assertion.

Therefore, the Court dismisses this claim as to Nadav Kalai.

## VI. Intentional Interference with Advantageous Relations

■ "In an action for intentional interference with advantageous relations, an employee must prove that (1) she had an advantageous employment relationship with her employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions." *Cariglia,* 363 F.3d at 88 (quoting *Weber v. Community Teamwork, Inc.,* 434 Mass. 761, 781, 752 N.E.2d 700 (2001)). Actions brought against a plaintiff's supervisor must also establish that "the 'supervisor who discharges or recommends discharge of an employee is not

---

5. Anjomi's Amended Complaint states that the co-workers made disparaging remarks, but does not establish whether these remarks were sexual orientation or race-related. Amended Compl. ¶ 43. The extent of Nadav Kalai's plausibly disparaging statements appear to be his response to Anjomi's complaint. Amended Compl. ¶ 45 (alleging that Nadav Kalai responded by stating "[W]hat, did Tomer give you googly eyes again?").

6. In the Amended Complaint, prior to Anjomi's complaint with the Commission, Anjomi alleges that Nadav Kalai told Anjomi that "they were intentionally refusing to take action" regarding Anjomi's additional complaints. Amend. Compl. ¶ 55. This still does not establish that such refusal was based on discriminatory animus.

liable for interference with the employee's contract or business relations unless the supervisor's actions were motivated by actual malice.'" *Id.* (quoting *Galdauckas v. Interstate Hotels Corp. No. 16*, 901 F.Supp. 454, 465 (D.Mass.1995) (Gorton, J.)).

■ Anjomi establishes the first and fourth elements but does not provide evidence as to the second or third elements. As far as Kalai's actions relating to this case, Anjomi provides no evidence or facts that establish that Nadav Kalai knowingly induced anyone to terminate Anjomi's employment, acted with improper motive or means, or acted with actual malice. *Id.*; *see also Encompass Ins. Co. v. Giampa*, 522 F.Supp.2d 300, 315 (D.Mass.2007) (Lindsay, J.) (finding that a party's "failure to allege an intent to interfere is fatal to all of their intentional interference claims").

Therefore, the Court dismisses this claim as to Nadav Kalai.

## VII. Intentional Infliction of Emotional Distress

Anjomi fails to establish a claim for intentional infliction of emotional distress. *See Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997). While Anjomi states that he experienced emotional distress, he describes neither the distress nor any sort of distress that would be so severe that "no reasonable person could be expected to endure it." *Id.*

Even if this Court accepts that Anjomi experienced emotional distress due to Nadav Kalai's alleged conspiracy, he fails to satisfy the other required elements of this claim. *See id.* First, Anjomi presents no

evidence that Nadav Kalai intended, knew, or should have known that Anjomi would experience emotional distress. Second, he provides no evidence that the conduct was "extreme and outrageous" and "beyond all possible bounds of decency" that would be "utterly intolerable in a civilized community." *Gouin v. Gouin*, 249 F.Supp.2d 62, 73 (D.Mass.2003) (Collings, M.J.) (internal citations omitted) (citing *Tetrault*, 425 Mass. at 466, 681 N.E.2d 1189).

Therefore, the Court dismisses this claim.

## VIII. Violation of 29 U.S.C. § 1132

Individuals may bring civil enforcement claims under the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132. A complaint in an ERISA action should allege that the plaintiff is empowered to bring suit under the statute. *Lerra v. Monsanto Co.*, 521 F.Supp. 1257, 1263 (D.Mass.1981) (Garrity, J.). Anjomi, however, fails to allege that the plans in question are ERISA plans.[7] *Cf. Peavey v. A. Rosenblum, Inc.*, 793 F.Supp.2d 590, 595 (E.D.N.Y.2011).

Therefore, the Court dismisses this claim as to Nadav Kalai.

## IX. Defamation

■ Anjomi states that his wife was the only other person to receive the allegedly defamatory letter. Even if this Court accepts that the statements were false, this hardly seems like the "publication of a false statement of and concerning the plaintiff" that would damage his "reputation in the community." *Stanton v. Metro Corp.*, 438 F.3d 119, 124 (1st Cir.2006) (stating that plaintiffs must establish that "the defendant was at fault for the publica-

---

**7.** The proposed Amended Complaint does state that Nadav Kalai, along with other defendants, are "administrators for retirement benefits and restricted stock benefits." Amended Compl. ¶ 103.

tion of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss"). The cases that Anjomi cites involve public publication and transmittal. *See generally New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (involving an advertisement published in a newspaper); *Eyal v. Helen Broad. Corp.,* 411 Mass. 426, 583 N.E.2d 228 (1991) (involving a radio broadcast). Anjomi never alleges that the letter was publicly distributed in a similar manner.

Therefore, the Court dismisses this claim as to Nadav Kalai.

## X.  CONCLUSION

For the above reasons, the Court GRANTS Nadav Kalai's Motion to Dismiss in its entirety.

SO ORDERED.